# EXHIBIT #8

**Group 2 – Google's Responsive Claim Construction Brief**
**(Civil Case Nos. 6:20-cv-00574-ADA, 6:20-cv-00576-ADA, 6:20-cv-00579-ADA, and 6:20-cv-00580-ADA)**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/770,868 | 02/03/2004 | Sami Inkinen | 886A.0006.U1(US) | 1049 |

29683          7590          08/30/2007
HARRINGTON & SMITH, PC
4 RESEARCH DRIVE
SHELTON, CT 06484-6212

| EXAMINER |
|---|
| KUNAMNENI, HARI P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2153 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/30/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

WSOU_576_8595283-0000338

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/770,868 | INKINEN ET AL. |
| | **Examiner** | **Art Unit** | |
| | Hari P. Kunamneni | 2153 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☐ Responsive to communication(s) filed on <u>03 February 2004</u>.

2a)☐ This action is **FINAL**.  2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-24</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-24</u> is/are rejected.

7)☒ Claim(s) <u>24</u> is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date <u>See Continuation Sheet</u>.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

U.S. Patent and Trademark Office

WSOU_576_8595283-0000339

Continuation of Attachment(s) 3). Information Disclosure Statement(s) (PTO/SB/08), Paper No(s)/Mail Date :March 1, 2004 and June 26, 2006.

WSOU_576_8595283-0000340

Application/Control Number: 10/770,868                                    Page 2
Art Unit: 2153

# DETAILED OFFICE ACTION

### *Claim Rejections - 35 USC § 112*

1.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.

2.      Claim 1 and 24 are rejected under 35 U.S.C. 112, second paragraph, as being
indefinite for failing to particularly point out and distinctly claim the subject matter which
applicant regards as the invention.

         Claim 1 and 24, last line, state, "… level of device activity …", it is not
clear if the activity is content provider device, content receptor device or both.
Examiner has assumed it is the content receptor device activity.

         Appropriate correction(s) are required.

### *Claim Rejections - 35 USC § 102*

3.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that
form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public
> use or on sale in this country, more than one year prior to the date of application for patent in the United
> States.

WSOU_576_8595283-0000341

Application/Control Number: 10/770,868                                    Page 3

Art Unit: 2153

4.      Claims 1-5, 15-18, and 16-22 are rejected under 35 U.S.C. 102(b) as being

anticipated by Kim et al. (US 2002/0052925).


For claim 1 and 24:

  A system and method comprising a content provider device (See FIG. 3,

Item 303, server) and a content receptor device (See FIG. 3, Item 305, client),

the content provider device  usable to transfer content to the content receptor

device, and the content receptor device operable to receive content from the

content provider device (downloading material is transferring from content

provider device to content receptor device; see Page 3, Para 44, lines 2-4, "...

downloads advertising materials when the user's activity is low; ...") and store the

content on memory means (storing on local device is storing in the memory; see

page 3, Para 44, lines 3-4, ".. storing the material in the user's local storage"),

wherein at least one of devices comprises content transfer control means

arranged to initiate the transfer of an item (download contents when user does

not use the bandwidth is transfer control means; see Page 5, Para 75, lines 7-10,

"... constantly monitors the user's network access speed and only when the user

does not use the bandwidth actively, does it download the advertising contents

...") of content from the content provider device to the memory means of the

content receptor device according to the determination of an acceptable level of

device activity (when the user does not use the bandwidth actively).

WSOU_576_8595283-0000342

Application/Control Number: 10/770,868                                    Page 4
Art Unit: 2153

For claim 2:

      A system according to claim 1 (see supra for claim 1 discussion), wherein

the content transfer control means is arranged to distinguish between different

threshold levels of device activity (if download occurs only when below a pe-

determined threshold value, then control means is arranged to distinguish

between threshold levels; see page 6, column 1, Para 75, lines 9-10," …

background download continues when the activity of the user's timeline is low

below a pre-determined ***threshold*** value").


For claim 3:

      A system according to claim 1 (see supra for claim 1 discussion), wherein

the content transfer control means is arranged to determine device activity by

analyzing the passing of time and by associating acceptable levels of device

activity with particular times ((if download occurs only when below a pre-

determined threshold value, then control means is arranged to distinguish

between threshold levels with passage of tine; see page 6, column 1, Para 75,

lines 9-10," … background download continues when the activity of the user's

timeline is low below a pre-determined ***threshold*** value" ).


For claim 4:

      A system according to claim 1 (see supra for claim 1 discussion), wherein

the content transfer control means is arranged to determine device activity by

WSOU_576_8595283-0000343

Application/Control Number: 10/770,868                           Page 5
Art Unit: 2153

monitoring the usage of one or more of the device components (User activity is

determined by monitoring user network access speed, where network is a

component, see page 5, Para 75, lines 7-8, "... constantly monitors the user's

network access speed") over a particular time duration (the duration is when user

is online, See page 3, Para 44, lines 1-2, "... continuously monitors the user's

activity while the user is online").

For claim 5:

A system according to claim 1 (see supra for claim 1 discussion), wherein

the content receptor device comprises the content transfer control means

configured to determine a acceptable activity period (activity period is when user

is online, see page 3, Para 44, lines 1-2, "... continuously monitors the user's

activity while the user is on line") by monitoring component usage over a

particular time duration, and wherein the content transfer control means is

configured to consider that an acceptable activity period has occurred when

component usage has been below a particular threshold level over the particular

time duration (The particular time duration is when user is online, see page 3,

Para 44, lines 1-2, "... continuously monitors the user's activity while the user is

on line" and particular threshold level is below pre-determined threshold value;

see Page 6, Para 76, line 10, "... low below a pre-determined threshold value

...").

Application/Control Number: 10/770,868          Page 6
Art Unit: 2153

For claim 15:

       A content receptor device (See FIG. 3, Item 305) operable to receive content from a content provider device (See FIG. 3, item 303 server, content providing device) and store the content on memory means (storing in local storage is storing in memory; see page 3, Para 44, line 4, "... in the user's local storage"), the content receptor device comprising content transfer control means (client software downloads means that control means is residing in the content receptor device; see Page 5, Para 75, lines 7-9, "The client software constantly monitors ... does it download") arranged to initiate the transfer of an item of content (download contents when user does not use the bandwidth is initiation of transfer means, See Page 5, Para 75) according to the determination of an acceptable level of device activity (when the user does not use the bandwidth actively is determination of acceptable device activity; see page 5 Para 75, lines 8-9, "only when the user does not use the bandwidth actively").

For claim 16:

       A device according to claim 15 (see supra for claim 15 discussion), wherein the content transfer control means is arranged to distinguish between different threshold levels of device activity (low below a pre-determined threshold value means that transfer control can distinguish between different levels; see page 6, column 1, Para 75, lines 9-10," ... low below a pre-determined ***threshold*** value").

WSOU_576_8595283-0000345

For claim 17:

      A device according to claim 15 (see supra for claim 15 discussion),
wherein the content transfer control means is arranged to determine device
activity by analyzing the passing of time (passage of time is while the user is
online, see page 3, Para 44, lines "continuously monitors the user's activity while
the user is on line") and by associating acceptable levels of device activity
(acceptable level of activity is user activity is low, see page 3, Para 44, line 3 "...
when the user's activity is low") with particular times (when the user is online).

For claim 18:

      A device according to claim 15 (see supra for claim 15 discussion),
wherein the content transfer control means is arranged to determine device
activity by monitoring the usage of one or more of the device components
(network is a device component; see page 5, Para 75, lines 7-8, "The client
software constantly monitors the user's network access speed") over a particular
time duration (particular time of duration is when the user is on line; see Page 3,
Para 44, lines 1-2, "This invention continuously monitor the user's activity while
the user is on line").

WSOU_576_8595283-0000346

Application/Control Number: 10/770,868                                              Page 8
Art Unit: 2153

### *Claim Rejections - 35 USC § 103*

5.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6.      Claims 6 is  rejected under 35 U.S.C. 103(a) as being unpatentable over  Kim et

al (US 2002/0052925) in view of Horvitz (US 6067565).


        For claim 6 Kim et al. teaches everything except (see supra claim 5

discussion) prediction of future device activity based on current or past activity.

            The general concept of predicting device activity based on past activity is

well known in the art as illustrated by Horvitz. (Predicting which task next will be

called is equivalent to predicting what will be the future device activity; see

column 10, lines 51-52, "probabilistically analyzes ***future task instances*** [is

predicting the future device activity ...").

        It would have been obvious to one in skilled in the art at the time of the

invention to modify Kim et al. to predict future activity of device in order to reduce

user frustration and increasing user satisfaction as taught in Horvitz (see column

3, lines 32-37, "Advantageously, use of such a technique is likely to significantly

increase the rate at which pages are typically displayed to a user, thus reducing

user frustration and increasing user satisfaction").

7.      Claim 7 and 19 are rejected under 35 U.S.C. 103(a) as being unpatentable over
Kim et al in view of Perlman (US 6237039).

For claims 7 and 19, Kim et al teaches everything (see supra for claim 1
discussion) except suspend or terminate a transfer until acceptable device
activity.

The general concept of termination or suspension of a transfer until an
acceptable device activity is well known in the art as illustrated by Perlman (see
column 8, lines 11-13, "If at step 514 the internet system client is not in an idle
state, then in step 524 auxiliary data transfer (if any) will be suspended.").

It would have been obvious to a person ordinary skill in the art to modify
Kim et al to suspend transfer until acceptable device activity in order to not to
slow down the user activity as taught in Kim (See page 3, Para 44, line 5-6, "...
without slowing down the user's activity ...")

8.      Claim 8 and 20 are rejected under 35 U.S.C. 103(a) as being unpatentable over
Kim et al in view of Andrew et al. (US 6259819).

For claim 8 and 20, Kim et al teaches everything (see supra claim 1
discussion) except compressing the transferred content.

The general concept of compressing is well known in the art as illustrated
by Andrew et al (see Column 1, lines 23-26, "An advantage of compressing a
digital image is that compressed digital image data physically occupies less

WSOU_576_8595283-0000348

storage space on the storage device (eg. RAM, Disk, or Magnetic Tape
storage").

It would have been obvious at the time of invention for an ordinary person
skilled in the art to modify Kim et al to compress the transferred content in order
to save storage as taught by Andrew et al. (see Column 1, lines 23-26, "An
advantage of compressing a digital image is that compressed digital image data
physically occupies less storage space on the a storage device (eg. RAM, Disk,
or Magnetic Tape storage.").

9.      Claim 9 is rejected under 35 U.S.C. 103(a) as being unpatentable over Kim et al
in view of Nishikiori et al. (US 2004/0205620).

Kim et al teaches everything (see supra claim 1 discussion) except for
configuring the content in to a form suitable for delivery based on receptor device
capabilities.

The general concept of configuring content in to from suitable for delivery
based on receptor capabilities is well known in the as illustrated by Nishikiori et
al. (Processing or editing pages based on display capabilities of terminal is
configuring content based on device capability, See Page 4, para 55, last line,
"Further, pages are processed and edited according to the display capability of
the connecting terminal ...").

Application/Control Number: 10/770,868                                    Page 11
Art Unit: 2153

It would have been obvious for a person skilled in the art at the time of
invention for to modify Kim et al to be able to configure content based on
receptor device capabilities in order to be able to display the content based on
buffer availability as taught by Nishikiori et al. (See Page 4, Para 55, last line, "…
for example for example, thereby enabling to avoid such defects that pages
cannot be displayed due to lack of buffer capacity.").

10.     Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Kim et
al in view of King et al (EP 0993165).

Kim et al teaches everything (see supra for claim 1 discussion)
except content provider device having a wireless transmitter and content
receptor device includes wireless receptor device.

The general concept of content providing device having wireless
transmitter and content receiving device having wireless receiver is well
known in the art as illustrated by King et al. (See Fig 1A, Item 12,
SERVER connected to WIX[R]ELESS NETWORK, which implies server
has a wireless transmitter) and mobile unit has a receiver (See Fig. 1A,
Item 16-1, "MOBILE DEVICE 1", since mobile unit is connected to wireless
network, it should have an wireless receiver);

It would have been obvious for an ordinary person in skilled in the
art to modify Kim et al to have wireless transmitter inside the content
provider device and a wireless receiver insider the content receiving

WSOU_576_8595283-0000350

Application/Control Number: 10/770,868                                     Page 12
Art Unit: 2153

device in order to be mobile as taught in King et al. (Mobile units means,

they are mobile; see, Fig. 1A, serving various mobile units, 16-1, ... 16n).

11.     Claim 11 is rejected under 35 U.S.C. 103(a) as being unpatentable over Kim et

al. in view of Gaudreau (US 6239843).

Kim et al teaches everything (see supra claim 1 for discussion)

except downloading secondary content.

The general concept downloading secondary content is well known

in the art as illustrated by Gaudreau (see column 5, lines 49-55, "...

programmed to extract the ***teletext and closed caption*** [secondary] data

from the incoming signal and provide the resulting data to the output

buffers 410A-B. The data in the output buffers 410A-B may be used in any

manner like any digital data signals, for example, to receive news,

***download files*** or programs ...").

It would have been obvious at the time of the invention to a person

ordinary skill in the art to modify Kim et al. to down load the secondary

content in order to down load secondary content as taught by Gaudreau

(see column 5, lines 49-55, "... programmed to extract the ***teletext and***

***closed caption*** [secondary] data from the incoming signal an dprovide the

resulting data to the output buffers 410A-B. The data in the output buffers

410A-B may be used in any manner like any digital data signals, for

example, to receive news, ***download files*** or programs ...").

Application/Control Number: 10/770,868                     Page 13
Art Unit: 2153

12.    Claim 12 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Kim et al in view of Gaudreau and Gauvin et al. (US 6061686).

For claim 12, Kim et al and Gaudreau teaches every thing (see

supra claim 12 for discussion) except for associating update time with the

content.

The general concept of associating content with update time is well

known in the art illustrated by Gauvin et al. (See column 6, lines 9-10, "...

and the ***last update time*** of each of the ***client copies*** ... has fields

"client", "web page(s)" and "last update time and date of client copy of the

web page.").

It would have been obvious for a person of ordinary skill in the art to

modify Kim et al and Gaudreau to associate update time with an item in

order to update the document as taught in Gauvin et al (see Abstract, lines

9-10, "the remote document copy is updated to reflect the modifications.").

For claim 13, Kim et al and Gaudreau teaches every thing (see

supra for discussion) except for down loading most current version of item.

The general concept of downloading most current version of item is

well known in the art as illustrated by Gauvin et al. (See FIG. 8 in

conjunction with Column 7, lines 10-15, "At step 812, the update server

Application/Control Number: 10/770,868                                    Page 14
Art Unit: 2153

502 ___uploads___ to the client 200 a ___copy of all web pages that have been___

___modified since the times in the time message___. These web pages are

determined by comparing the times received in the time messages to the

times stored in the master database. ").

It would have been obvious at the time of the invention for a person

skilled in the art to modify Kim et al and Gaudreau to down load latest

version of item in order to down load most current version of the item (See

FIG. 8 in conjunction with Column 7, lines 10-15, "At step 812, the update

server 502 ___uploads___ to the client 200 a ___copy of all web pages that have___

___been modified since the times in the time message___. These web pages

are determined by comparing the times received in the time messages to

the times stored in the master database. ").

13.    Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Kim et al

in view of Gaudreau and King et al (EP 0993165).

Kim et al and Gaudreau teaches every thing (for discussion see supra

claim 11) except user being able to select the content.

The general concept of user selecting a content is well known in the art as

illustrated by King et al. (see Page 9, Para 62, lines 51-52, "... is able to select

from certain content channels that they wish to have resident locally ...", i.e. user

is defining downloadable content.).

Application/Control Number: 10/770,868                                    Page 15
Art Unit: 2153

It would have been obvious to an ordinary person skilled in the art at the

time of invention modify Kim et al and Gaudreau to have user select a content in

order to be specifically removed only instructed to do so as taught in King et al.

(see page 9, Para 61, lines 47-49, "In other words, the resource associated with

the content channel remain in the cache memory until they are specifically

instructed to be removed or refreshed. In other words, the reserved portion of the

cache memory provides persistent storage.").


14.   Claim 21 is rejected under 35 U.S.C. 103(a) as being unpatentable over Kim et al

in view of Nishikiori et al. (US 2004/0205620).

Kim et al teaches every thing (see supra claim 15 discussion) except

configuring the content in to a form suitable for delivery based on receptor device

capabilities.

The general concept of configuring content in to from suitable for delivery

based on receptor capabilities is well known in the as illustrated by Nishikiori et

al. (Processing or editing pages based on display capabilities of terminal is

configuring content based on device capability, See Page 4, para 55, last line,

"Further, pages are processed and edited according to the display capability of

the connecting terminal ...").

It would have been obvious for a person skilled in the art at the time of

invention for to modify Kim et al to be able to configure content based on

receptor device capabilities in order to be able to display the content based on

WSOU_576_8595283-0000354

Application/Control Number: 10/770,868                                    Page 16
Art Unit: 2153

buffer availability as taught by Nishikiori et al. (See Page 4, Para 55, last line, "...

for example for example, thereby enabling to avoid such defects that pages

cannot be displayed due to lack of buffer capacity.").


15.     Claim 22 is rejected under 35 U.S.C. 103(a) as being unpatentable over Kim et al

in view of Gauvin et al (US 6061686).

          For claim 22, Kim et al teaches every thing (see supra claim 15 for

discussion) except for downloading only updated content.

          The general concept of downloading updated content is well

known in the art as illustrated by Gauvin et al. (See FIG. 8 in conjunction

with Column 7, lines 10-15, "At step 812, the update server 502 ***uploads***

to the client 200 a ***copy of all web pages that have been modified***

***since the times in the time message***. These web pages are determined

by comparing the times received in the time messages to the times stored

in the master database. ").

          It would have been obvious at the time of the invention for a person

skilled in the art to modify Kim et al to down load latest version of item in

order to down load only updated content  (See FIG. 8 in conjunction with

Column 7, lines 10-15, "At step 812, the update server 502 ***uploads*** to the

client 200 a ***copy of all web pages that have been modified since the***

***times in the time message***. These web pages are determined by

Application/Control Number: 10/770,868                                      Page 17
Art Unit: 2153

comparing the times received in the time messages to the times stored in

the master database. ").

16.     Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over Kim et al

in view of King et al (EP 0993165).

Kim et al and Gaudreau teaches every thing (for discussion see supra

claim 15) except user being able to select the content.

The general concept of user selecting a content is well known in the art as

illustrated by King et al. (see Page 9, Para 62, lines 51-52, "... is able to select

from certain content channels that they wish to have resident locally ...", i.e. user

is defining downloadable content.).

It would have been obvious to an ordinary person skilled in the art at the

time of invention modify Kim et al and Gaudreau to have user select a content in

order to be specifically removed only instructed to do so as taught in King et al.

(see page 9, Para 61, lines 47-49, "In other words, the resource associated with

the content channel remain in the cache memory until they are specifically

instructed to be removed or refreshed. In other words, the reserved portion of the

cache memory provides persistent storage.").

WSOU_576_8595283-0000356

Application/Control Number: 10/770,868                                    Page 18
Art Unit: 2153

# **<u>CONCLUSION</u>**

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Hari P. Kunamneni whose telephone number is

(571)274-1592.  The examiner can normally be reached on Monday thru Friday 8:00-

4:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Glenton B. Burgess can be reached on (571 )272-3949.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

hpk
8/21/2007

GLENTON B. BURGESS
SUPERVISORY PATENT EXAMINE
TECHNOLOGY CENTER 2100