# EXHIBIT #13

**Group 2 – Google's Responsive Claim Construction Brief**
**(Civil Case Nos. 6:20-cv-00574-ADA, 6:20-cv-00576-ADA, 6:20-cv-00579-ADA, and 6:20-cv-00580-ADA)**

ATTORNEY DOCKET: 886A.0006.U1(US)

## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

| | |
|---|---|
| In re U.S. Patent Application of: ) | |
| ) | |
| INKINEN ET AL. ) | |
| ) | Examiner: BARQADLE, YASIN M. |
| Serial No.: 10/770,868 ) | |
| ) | Group Art Unit: 2456 |
| Filed: FEBRUARY 3, 2004 ) | |
| ) | |
| Title: ) | |
| CONTENT DELIVERY ) | |
| ACCORDING TO DEVICE ) | |
| ACTIVITY ) | |

## APPELLANT'S REPLY BRIEF

Mail Stop Appeal Brief – Patents
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

This Reply Brief is submitted pursuant to 37 C.F.R. §41.41 and MPEP §1208 in response to the Examiner's Answer mailed on March 31, 2010 for the above-referenced patent application. An Appeal Brief was filed on August 28, 2009 and corrected via a Response to Notification of Non-Compliant Appeal Brief filed on December 30, 2009. The Appeal Brief was filed further to a Notice of Appeal filed on May 11, 2009.

This Reply Brief is filed within two months from the mailing date of the above-cited Examiner's Answer and the undersigned representative believes that no fee is due at this time. However, should the undersigned agent be mistaken, please consider this a petition for any extension of time under 37 C.F.R. §1.136(a) or (b) that may be required to avoid dismissal of this appeal, and charge Deposit Account No. 50-1924 for any required fee deficiency.

Application No.: 10/770,868  
Art Unit: 2456

Appellant's Reply Brief Dated May 27, 2010

## ARGUMENTS:

(A)    ISSUE A: *HORVITZ*

The Appellant respectfully disagrees with the Examiner.

Independent claim 15 recites in part: "A device comprising: a user interface configured to allow a user to select **an item of content**, ...a content transfer controller configured to determine an acceptable activity period by monitoring usage of the one or more components over a particular time duration, ...the content transfer controller being arranged: to initiate transfer of **the selected item of content** from a content provider device according to the determination of an acceptable activity period..."

As recited in claim 15, the item of content for which transfer is initiated during an acceptable activity period by the content transfer controller **is the same item of content** that is selected by the user through the user interface.

This is not the case for *Horvitz*. As described by *Horvitz*, **two different items are downloaded**: a desired web page and prefetched content. At column 8, lines 33-36, *Horvitz* states: "[A] user stationed at the client computer can access a desired web page by supplying the browser with a corresponding web address (in the form of a uniform resource locator--URL) for that page." The desired web page is retrieved and displayed for the user. *See col. 8, lines 45-59.* In addition, *Horvitz* describes "harnessing available computer resources at a client computer, during periods of low processing activity when processing capacity would otherwise be wasted, ... to prefetch and store web pages for subsequent access." *See col. 9, lines 11-20.* As explained by *Horvitz* at col. 9, lines 28-32: "The particular pages that are prefetched are determined through a user model as being those, given a page which a user is currently viewing or a sequence of pages visited, would provide the largest benefit, in terms of, e.g., expected utility, to that user."

Thus, based on the web page the user is currently viewing (e.g., the desired web page) or a sequence of pages that the user has visited, *Horvitz* discloses determining pages to be prefetched and then prefetching them during periods of low processing activity.

Application No.: 10/770,868  
Art Unit: 2456

Appellant's Reply Brief Dated May 27, 2010

The Examiner incorrectly combined the two items described by *Horvitz*. That is, the Examiner argued that the desired web page of *Horvitz* corresponds to "a user interface configured **to allow a user to select an item of content**" while the prefetched content of *Horvitz* corresponds to "a content transfer controller configured to determine an acceptable activity period by monitoring usage of the one or more components over a particular time duration, …the content transfer controller being arranged: to initiate transfer of **the selected item of content** from a content provider device according to the determination of an acceptable activity period," as recited in claim 15. While *Horvitz* discloses two different pieces of content being downloaded, at the same or at separate times, claim 15 is directed to a single item of content, that selected by the user. Clearly, the Examiner's application of *Horvitz* is in error.

Furthermore, note that among the two items downloaded by *Horvitz*, the desired web page and the prefetched content, only one of these is requested by the user. That is, the user requests the desired web page "by supplying the browser with a corresponding web address." In contrast, the pages to be prefetched (the prefetched content) "are determined through a user model." Both of these items are in accordance with the above description of *Horvitz*. At no point does *Horvitz* disclose or suggest that a user select the prefetched content prior to downloading. Furthermore, and as noted in the Appeal Brief on pages 9-10, it would be wholly against the concept and alleged advantages of prefetching if the prefetched content were initially selected by the user. Clearly, the prefetched content is retrieved **without first being selected by the user** and, thus, cannot be seen to correspond to "the selected item of content" recited in claim 15.

The above-noted distinctions between *Horvitz* and claim 15 of the instant application are clearly illustrative of the differences between techniques associated with prefetching and the subject matter recited in claim 15. These differences are described in the Appeal Brief. *See p. 7, para. 1 – p. 10, para. 1.*

Based on the above arguments, and those presented in the Appeal Brief, the Examiner's rejection of claim 15 is traversed. The above arguments for claim 15 are further applied for claims 24, 27 and 36.

WSOU_576_8595283-0000042

Application No.: 10/770,868  
Art Unit: 2456

Appellant's Reply Brief Dated May 27, 2010

With regards to dependent claim 9, it is maintained that *Horvitz* does not disclose or suggest "wherein the content provider device is arranged to configure the selected item of content into a form suitable for delivery **with regard to delivery capabilities of the content receptor device**," as recited in claim 9.

In order for the content provider device to configure the selected item of content into a form suitable for delivery **with regard to delivery capabilities of the content receptor device**, it is implicit that the content provider device must have knowledge regarding the delivery capabilities of the content receptor device. *Horvitz* does not disclose or suggest that a content provider have such knowledge nor that a content provider should utilize such knowledge when provisioning a selected item of content. It should be noted that those portions of *Horvitz* identified and relied on by the Examiner all relate to aspects and/or elements of the device used by the user, not the content provider.

Based on the above arguments, and those presented in the Appeal Brief, the Examiner's rejection of claim 9 is traversed. The above arguments for claim 9 are further applied for claim 34.

With regards to dependent claim 26, it is maintained that *Horvitz* does not disclose or suggest "wherein the selected item of content has an associated transmission duration which can be analyzed by the content transfer controller, and the content transfer controller is arranged to analyze **whether a sufficient duration of an acceptable level of device activity is available** for the transfer of the selected item of content."

As noted by the Examiner, *Horvitz* discusses performing prefetching during periods of low processing activity, such as intervals of relatively low network activity. However, *Horvitz* does not disclose or suggest any operation with respect to "**a sufficient duration of an acceptable level of device activity.**" At most, *Horvitz* can be seen to disclose assessing available network capacity at a single instance of time.

WSOU_576_8595283-0000043

Application No.: 10/770,868  
Art Unit: 2456

Appellant's Reply Brief Dated May 27, 2010

Furthermore, *Horvitz* is not seen to anticipate or calculate **whether a sufficient duration of an acceptable level of device activity is available**. For example, at column 12, lines 3-20, *Horvitz* discloses:

> Advantageously, a task instance is selected at a beginning of each of these idle-time intervals and processed during the remainder of that interval. The selected instance is one that is most likely to occur in the near-future and will be precomputed, during an associated idle-time interval, to the extent of the remaining time available during that interval. Once this task instance has been precomputed, its results, **partial if the task has not completed prior to the end of the interval**, are stored for subsequent access and use. Ideally, by having these results precomputed and ready for future use, future response time, i.e., run-time delay, is appreciably shortened since that task instance, when it would otherwise be dispatched for execution, will have already executed--fully **or at least partially**. In this manner, available computer resources, here processing time, are maintained at relatively high usage during all time periods, rather than experiencing bursty usage patterns as conventionally occurs; hence, significantly enhancing overall system throughput.

Thus, *Horvitz* anticipates that a task may not be completed in the interval in question. Clearly, *Horvitz* does not consider **whether a sufficient duration of an acceptable level of device activity is available**.

Based on the above arguments, and those presented in the Appeal Brief, the Examiner's rejection of claim 26 is traversed. The above arguments for claim 26 are further applied for claim 31.

(B)   ISSUE B: *ROBERTS*

The Appellant respectfully disagrees with the Examiner.

Claim 15 recites in part: "a content transfer controller configured to determine an acceptable

Application No.: 10/770,868  
Art Unit: 2456

Appellant's Reply Brief Dated May 27, 2010

activity period by monitoring usage of the one or more components over a particular time duration, and wherein the content transfer controller is configured to determine that an acceptable activity period is present when the usage of the one or more components is determined to have been below a particular threshold level **over the particular time duration**, the content transfer controller being arranged."

While at column 7, lines 40-58 *Roberts* refers to various times and/or portions of time with regards to FIG. 4, *Roberts* does not limit the monitoring of the level of actual network utilization to any period of time whatsoever. It appears that the monitoring of *Roberts* is ongoing. This is supported by FIG. 4 wherein *Roberts* adjusts the threshold level based on the maximum detected level of actual network utilization. *See col. 8, lines 13-29 of Roberts*. Since *Roberts* does not appear to disclose limiting the period of monitoring, it is clear that *Roberts* does not disclose or suggest "a content transfer controller configured to determine an acceptable activity period by monitoring usage of the one or more components **over a particular time duration**, and wherein the content transfer controller is configured to determine that an acceptable activity period is present when the usage of the one or more components is determined to have been below a particular threshold level **over the particular time duration**, the content transfer controller being arranged," as recited in claim 15.

At column 8, lines 5-10, *Roberts* notes that: "This transfer of data could just as easily relate to activities initiated by a user action on the PC, such as playing video games or downloading music MP3 files, eBooks and so on. Moreover, the data to be transferred may include text, image and/or audio data."

This disclosure by *Roberts* cannot be seen to anticipate or render obvious "A device comprising: a user interface configured to allow a user **to select an item of content**, ...a content transfer controller configured to determine an acceptable activity period by monitoring usage of the one or more components over a particular time duration, ...the content transfer controller being arranged: to initiate transfer of **the selected item of content** from a content provider device according to the determination of an acceptable activity period...," as recited in claim 15.

Application No.: 10/770,868  
Art Unit: 2456

Appellant's Reply Brief Dated May 27, 2010

Mere passing mention that the activities could be "initiated by a user action" is clearly insufficient to establish that a user has *actually* selected the item of content in question. There are numerous cases wherein content is downloaded without actual selection by the user, even though the user has permitted (e.g., initiated) the download. An example of such a case might be an ongoing subscription a user has to automatically download newly published content (e.g., audio files for an ongoing, regularly published "broadcast").

As noted in the Appeal Brief, *Roberts* does not disclose or suggest that the user select the data to be downloaded. In fact, *Roberts* seems to suggest otherwise since, in the Background of the Invention section, *Roberts* identifies problems associated with the prior art update systems, including those wherein a user selects the updates to be downloaded.

Based on the above arguments, and those presented in the Appeal Brief, the Examiner's rejection of claim 15 is traversed. The above arguments for claim 15 are further applied for claims 24, 27 and 36.

It is briefly noted that all arguments presented in the Appeal Brief against the various rejections of the claims are maintained.

## **CONCLUSION**

For at least the reasons previously stated in the Appeal Brief filed on August 28, 2009, and further for the above reasons, the Applicant/Appellant contends that neither *Horvitz* nor *Roberts* can be seen to anticipate any of the currently pending claims. It is requested that the Appeal be maintained. The Applicant/Appellant respectfully requests that the Board reverse the final rejection of the claims in the Final Office Action of March 6, 2009, and further that the Board rule that the pending claims are patentable over the cited art.

Application No.: 10/770,868  
Art Unit: 2456

Appellant's Reply Brief Dated May 27, 2010

Respectfully submitted:

HARRINGTON & SMITH, PC

_/Alan L. Stern/_  
Alan L. Stern  
Reg. No.: 59,071

_May 27, 2010_  
Date

Customer No.: 29683

HARRINGTON & SMITH, ATTORNEYS AT LAW, LLC  
4 Research Drive  
Shelton, CT 06484-6212  
Telephone:     (203) 925-9400 ext. 18  
Facsimile:      (203) 944-0245  
E-mail:           astern@hspatent.com

## CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Mail Stop Appeal Brief – Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

_[signature]_  
Name of Person Making Deposit

_5-27-2010_  
Date